Our next case for argument is Vichio v. US Foods. Mr. DeGrand. Good morning, Judge Easterbrook. May it please the Court, my name is Luke DeGrand, and I represent Nick Vichio, the appellant in this age discrimination case. The District Court committed three errors in entering summary judgment in favor of US Foods. First, the Court committed both a legal error and a factual mistake in rejecting the admission contained in an email from the company's recruiting agent to its vice president of operations. In that email, sent as the company was searching for Mr. Vichio's replacement, the agent, Nicole Harris, told Mr. Zadlow that a candidate who was approximately Vichio's age had positive work experience and seemed to be a good fit. But she noted a negative quality. She told Mr. Zadlow that the candidate was, quote, more on the seasoned side. And Ms. Harris testified that at the time she sent this email, she understood that seasoned was a euphemism for old, and she was conveying a less positive attribute for employment at US Foods. Legally, the lower court incorrectly concluded that the statement could not be attributed to US Foods because Ms. Harris was just... Mr. DeGrand, my principal question is why it matters whether a statement is attributed to US Foods. Suppose this recruiter is taken as their agent, and statements of an agent are routinely attributed to the principal. But US Foods says that this person was not in the line of decision, that is, didn't make or affect the decision. Are you making a kind of cat's paw argument? No, Judge, I don't believe that I am. I'm not suggesting... I wonder, though, whether you don't need to, right? Suppose what your claim is, that somebody was fired as a matter of, say, sex discrimination, and you prove that five supervisors at US Foods have said things implying a desire to engage in sex discrimination. Attributed to their employer. But none of those five has anything to do with the decision, right? The plaintiff would not win unless you had a cat's paw situation, right? That's what worries me. How can you avoid making a cat's paw argument if you hope to succeed? So the distinction that I would draw between this case and cat's paw cases is that in the cat's paw cases, you're talking about the statement that reflects the personal bias of the speaker. This statement reflects... Look, your client gets relief if the decision is attributable to age. Not simply if there is one biased person employed by the company. The decision has to be the result of age discrimination. And that's why I'm asking how this recruiter's statement can show that this decision is a cat's paw inference, which you say you're not seeking. Because the decision at issue in this case, in my view, Judge Easterbrook, is the decision to fire and replace my client, and the statement reflects the criteria used by US Foods in finding a replacement for my client. And it clearly connotes that being more on the seasoned side, in other words, being Mr. Vicio's age, is a negative quality for filling his role. And this court's cases, from Baines to Simple to Murkowski, teach that where the declarant is addressing the criteria used in decisions such as hiring, firing, compensation, and the like... But look, I take your argument to be, suppose there are two supervisors at a company. Supervisor A says something like, gee, I don't really like to hire people over 40. Supervisor B, no one has ever accused B of age discrimination. Supervisor B fires someone. Is the company liable because of the statements by Supervisor A? Not if Supervisor A was not involved in the decision-making process. That's why my initial question was, was this recruiter involved in the decision to fire Vicio? And you said no. Not involved in the decision to fire, but involved in the decision to replace. And she's reporting directly to the central decision-maker here, Mr. Zadlow. And she tells Mr. Zadlow that it is a negative quality. That sets off the basis of a cat's paw argument, which you say you are not making. I don't see it as a cat's paw case, Judge. You're entitled to formulate your arguments as you wish. But I hope you see my problem. I just view cat's paw cases as involving statements of personal bias that are attempted to be attributed to the company. This is a statement of what she understood to be the company's criteria. The district court declined to place any probative weight, my reading of the district court opinion at least, is on Ms. Harris' statement. But even if you disregard her statement, do you have other support in the summary judgment record that would have shown? We certainly do, Judge. And that gets to the second two errors in the district court's ruling, in my view. The second is that the court ignored all of the record evidence of pretext. Mr. Vicio was targeted for termination by the new 36-year-old vice president of operations only 25 days after Mr. Zadlow joined the company. Prior to Mr. Zadlow's arrival, Mr. Vicio had received consistently favorable reviews of his performance and was considered one of the best warehouse supervisors in the Bensonville facility. The stated basis for the decision to fire Mr. Vicio was poor job performance, and yet his direct supervisor, the individual admittedly most knowledgeable regarding that performance, was not even consulted regarding the decision. Vicio and another age-protected worker, Mr. Klein, who was age 61, and only them, were then given identical, word-for-word identical performance improvement plans. The plans contained performance criticisms that the company could not begin to support, and a goal that was literally unattainable for these two older workers. And at the same time, the company immediately began searching to replace Mr. Vicio. As this disciplinary process was playing out, Zadlow's second-in-command, Mr. Hunter, who was the company's 30B6 witness, sent a telling email to Mr. Zadlow, his boss. Hunter told Zadlow about an episode in which Mr. Vicio performs his job correctly. Quote, so that would not be a good example, Hunter told Mr. Zadlow. Let me get downstairs and see what these guys are not doing today. The obvious implication is that he's throwing a wrench in our ability to fire him for performance reasons. When I asked him at his deposition about that email, Mr. Hunter refused to hazard a guess as to what he meant by that email, and the company completely ignores it in its brief. And at the same time, Mr. Hunter sent an email only to himself, in which he purported to criticize Mr. Vicio for a failure of supervision in an area of the warehouse that Mr. Vicio didn't even have responsibility for. And shortly thereafter, Mr. Zadlow admonished Mr. Hunter in an email telling him that the disciplinary record for these two older workers had to be, quote, airtight. And finally, on the day that the company fired Mr. Vicio, Hunter, the company's 30B6 witness, supporting the decision, disclaimed responsibility for the decision. He told Mr. Vicio as he escorted him from the building and walked into his car, Nick, this wasn't me. And the third aspect of the record that the district court ignored is the shifting explanations that have been offered by U.S. Foods to justify the decision to fire Mr. Vicio. There are a number of examples in our brief, but I would just like to highlight four. First, the company originally defended the decision to fire Mr. Vicio by asserting, both to the EEOC and in answer to interrogatory below, that in early 2017, the company adopted an initiative with a, quote, new focus on performance metrics to which Mr. Vicio allegedly failed to adhere. We spent a good deal of time trying to figure out what that meant. What was this new focus on performance metrics? Mr. Zadlow was unaware of it. Mr. Dalhay, Mr. Vicio's direct supervisor, was unaware of it. So the company changed its story. Now it says, that's never been the reason why we fired Mr. Vicio. Number two, the company literally denied the accuracy and admissibility of its own e-mail records and then submitted those same records in seeking summary judgment after discovery had closed and at a time when we no longer had the opportunity to inquire into the circumstances of their creation. I'm sorry to interrupt you, counsel. So you went through the parts of the record that you believe would support Mr. Vicio's case. There are facts that aren't advantageous to Mr. Vicio here, right? The fact that another Knight Warehouse supervisor was actually older than him and was never placed on PIP, the fact that three of the decision makers involved in the termination process were also age-protected under the ADEA, right? And so how do you deal with those facts? So with respect to the second piece, the decision makers, the record is pretty clear that the decision maker here was Mr. Zadlow. Ms. Couch testified. She's the human resources person. She had nothing to do with Mr. Vicio's performance. She was there to ensure that the decision complied with federal law. Mr. Hunter, who, by the way, disclaimed responsibility for the decision, clearly was following the directive of Mr. Zadlow, his boss. And as we know, Mr. Delahaye wasn't involved in the decision at all. With respect to the one supervisor that you mentioned who wasn't put on a PIP, the record doesn't speak to why he was not disciplined, but I will say that Mr. Zadlow was very early in his tenure as vice president of operations. He was only there for a year. He had only begun to reshape the workforce to his liking. Whether that individual would have been targeted next, we don't know. But the other individual who was given the PIP, I think the record is clear that his PIP only departed when Mr. Zadlow departed. So these PIPs were full of what we consider to be manufactured and fabricated reasons. We proved each one of them to be completely false, only to have the company shift their position and say something different. And then the other two points I would make is— Are there any questions pending? Your time has expired. Thank you very much, Judge. Ms. Kay. Good morning, and may it please the Court. My name is Danielle Kayes, and I represent U.S. Foods. We ask this Court to affirm summary judgment, because no reasonable juror can conclude that plaintiff's discharge was because of his age, or that it was the but-for cause. This is because Mr. Vischio, who was the second youngest of all his other successful supervisor peers, was undisputedly, by his own admissions, not meeting U.S. Foods' performance expectations. And age, undisputedly, was not the factor in his termination. I'd like to first address opposing counsel's claim that this was— Ms. Harris's comment was a statement of what she attributed to be U.S. Foods' criteria when she used the word seasoned. The evidence is actually completely to the contrary. As this Court noted, Ms. Harris was not a decision-maker for the termination, which is the only employment issue here today. Regardless, she made very clear that she did not use the word seasoned to mean age. She made very clear that she did not know the age of the person— You say that she was not the decision-maker. Is it established in this record that she did not have any input into the decision? She—her sole responsibility was to suggest candidates— I wish you would address my question, which is whether something is established in this record, not what you think. Yes, Your Honor, it is established. It is very clear that there were only three decision-makers, and she was not one of them. No, that's not the question I asked. I asked whether it is established in this record that she did not have any input into the decision. There is absolutely—it is, Your Honor. There is absolutely no evidence whatsoever in the record that she had any input. Please proceed. Thank you. And to say that she was describing U.S. foods criteria is contrary to the record because she said that it was not a criteria, that age was not a criteria, for any potential candidate. I'd also like to point out that Ms. Harris was primarily used to suggest candidates for a transportation manager position, and this happened primarily in this comment months after Mr. Vischio was terminated. Now, we are here today because Mr. Vischio did not act like a leader. Again, Mr. Vischio's job was to act as a warehouse supervisor and lead hourly employees. Those hourly employees were supposed to do the work of selecting products and loading them for transportation to U.S. foods customers in a very quick and correct manner. As a supervisor and as a leader, Mr. Vischio was expected to coach the employees on ways to improve their performance and show them how not to make mistakes and how to correct them. Ms. Case, so assuming that Mr. Vischio was not satisfying the legitimate expectations of U.S. foods, his employer, that in and of itself would not preclude him from asserting and making out an age discrimination claim, right, before the jury. So in other words, U.S. foods would say, you know what, the reason we fired him was because he wasn't doing all of these things, and Mr. Vischio, to the extent that he has any facts in the record, would say, no, they fired me because of my age, and here are all the things in the record that would support that, and then it would be up to the jury to determine what was actually the motivating factor, right? But in this case, he has admitted that he did the very things that U.S. foods said were the reasons that they terminated him. And so he has admitted to those things, and so his claim that he was terminated for performance reasons is not a lie. Are you over-reading the record, Ms. Case? There are far more disputes that Mr. Vischio identifies than your comment would seem to suggest. Well, Your Honor, on page 8 of our brief, we go through the admissions that Mr. Vischio makes. For example, he was told that in order to improve the performance of the hourly workers, he needed to find the low-performing workers, and he needed to audit them, observe them, and coach them on how to fix their mistakes and how to prevent them in the future. He admits, quote, that he checked people who were not low-performing, and this was after he received a memo telling him that he needed to focus on these low-performers, and after he received a performance improvement plan telling him that he needed to work on these low-performers. He also admits that he made unprofessional comments after he was told that he needed to stop being resistant to improving processes and act like a leader and have a positive attitude. These are all fair points for the jury because, for example, the jury will also hear that he was checking with Delhay very regularly to see if he was meeting the employer's expectations after he got the initial performance memorandum. So the question here is where there are reasonable inferences to be drawn on both sides. Why isn't it a question for the jury? Because he admits engaging in the very conduct that U.S. Foods said was the reason for terminating him. He was not acting like a leader. He was not having a leadership or a positive attitude. He was doing things that were the hourly employee's work instead of things he was supposed to do as a supervisor, and that is undisputed. It is undisputed that that was the reason for his termination. It's undisputed that U.S. Foods believed— Isn't it true that it's undisputed that he didn't meet the expectations as to whether or not that is what motivated his termination? I think that's why we're here today because that is disputed, right? Mr. Vischio claims that he was—in his opinion, he was doing the things that he was asked to do. However, his admissions are directly contrary to that. Additionally, some of the things that he refers to are contrary to the record, and that is why the court found that they should not be—they were not part of its decision. The court found that the reasons that Mr. Vischio was terminated because there was little evidence that he was meeting U.S. Foods' legitimate expectations. Mr. Vischio also admitted that after the company told him, hey, you're not meeting our expectations and gave him a plan in an effort to help him, he continued doing the things the same as he had been. The court made a corollary finding. It wasn't just about expectations. The court also found that there was just simply no evidence that age was the reason, which goes to Judge Lee's question. So can you turn to that for a minute? Absolutely. I mean, some of the very important facts here are that Mr. Vischio was the second youngest of his successful warehouse supervisors. The oldest supervisor did not receive a performance improvement plan, and Mr. Klein, who was older than Mr. Vischio, turned his performance around. He testified. He was told by Director Hunter that he had done better under the PIP and that he had successfully completed it, and the PIP expired at the end of the 90-day plan at the end of October, well before Mr. Zadlow left U.S. Foods. The fact that those other older workers were successful at U.S. Foods. How do you contend with our case law that you don't need to discriminate against everybody in a protected class to be found liable for discriminating against one person in that protected class? We're not saying that you don't need to discriminate against everybody in a protected class, and I think that goes to the case maybe Hively, where it was talking about statutory interpretation and disparate impact of a facially neutral law. But here the fact that there are older workers, workers that were older than him, that were successful, begs the question if Mr. Vischio, and again, there were two other decision makers who were nearly the same age as Mr. Vischio and older than Mr. Vischio. If all three of those decision makers were looking to terminate someone based on age, why did they pick him? There's no evidence whatsoever. There's no disputed evidence, and the record is unsupported that age had anything to do with this termination. Then how do you explain the emails back and forth from Mr. Hunter to Mr. Zadlow regarding the implementation of the PIP? First of all, Mr. Hunter takes the supervision over the PIP away from Mr. DeLay, is it, and gives it to Mr. Hunter because by his own admissions Mr. DeLay wasn't acting quickly enough, whatever that might mean. And then there are these emails, chatters back and forth about how it was implemented as counsel for Mr. Vischio kind of went over. How do you address those? Well, first, with respect to Mr. DeLay, Mr. DeLay stopped being a supervisor in late summer 2017. Mr. DeLay testified that was because of personal family situation, and Mr. Hunter, the 30B6 witness, also testified to that. He was Mr. Vischio's peer after late summer 2017. Also, the fact that Mr. Hunter was expressing dissatisfaction with everybody's performance, it said all workers or these guys' performance, does not mean that this had anything to do with age. It simply reflects the exact admissions that Mr. Vischio makes, that he was not doing what he was instructed to do under his PIP. For that reason, we ask, unless there's any further questions, I ask this court to affirm summary judgment on behalf of U.S. Foods because no reasonable juror can conclude that Mr. Vischio was terminated but for his age. Thank you. Thank you very much. The case is taken under advisement.